**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff*, <br><br> v. <br><br> KEYSIGHT TECHNOLOGIES, INC. <br><br> and <br><br> SPIRENT COMMUNICATIONS PLC, <br><br> *Defendants*. | Civil Action No. 1:25-cv-1734 (CJN) |

## ASSET PRESERVATION AND HOLD SEPARATE STIPULATION AND ORDER

It is hereby stipulated by and among the undersigned parties, subject to approval and entry of this Order by the Court, as follows.

### I. DEFINITIONS

As used in this Asset Preservation and Hold Separate Stipulation and Order ("Stipulation and Order"):

A.     "Acquirer" means Viavi or another entity approved by the United States in its sole discretion to which Defendants divest the Divestiture Assets.

B.     "Divestiture Assets" means all of Defendants' rights, titles, and interests in and to all property and assets, tangible and intangible, wherever located, relating to or used in connection with the Divestiture Business, including the following:

1.    the real property leasehold interests and associated renewal rights in the facilities located at (a) 27349 Agoura Road, Calabasas, California 91301 (United States); (b) 47-53 Lascar Catargiu Blvd., 1st District, Bucharest (Romania); (c) Pacific Guardian Center – Mauka Tower, 737 Bishop Street, Suite 1900, Honolulu, Hawaii 96813 (United States); (d) Unit 1301, 1302, 1303, 1305, 1306, 1307, 1309, 13th Floor, Shining Building, No. 35 Xueyuan Road, Haidian District, Beijing (China); (e) Unit B4-09, 4th Underground Floor, Shining Building, No. 35 Xueyuan Road, Haidian District, Beijing (China); and (f) 2nd Floor, Quadrant 2 of Tower 1, Umiya Business Bay, Sarjapur Outer Ring Road, Bangalore East Taluk 560 103 (India);

2.    all inventory (whether raw materials, work in process, semifinished goods, finished goods, packaging, labels, scrap or supplies);

3.    all furniture, fixtures, furnishings, vehicles, equipment, machines, computers, tools, spare parts and tooling, office and other supplies, technical documentation, and other tangible personal property (including third party software embedded therein) including as set forth on Annex 1, Schedule II.B.3 to the [Proposed] Final Judgment;

4.    all contracts, including all development contracts with XRComm and VVDN Technologies for Spirent's channel emulation business, contractual rights, and customer relationships, including Spirent's relationship with Calnex as a reseller and all other agreements, commitments and purchase orders, including those related to intellectual property, suppliers, or customers, and all outstanding offers or solicitations to enter into a similar arrangement; *provided, however,* that for any contracts that relate to both the Divestiture Business and to businesses not included in the Divestiture Assets,

only the portion of the contract related to the Divestiture Business is a Divestiture Asset; *provided*, *further*, that none of the following contracts form part of the Divestiture Assets: (i) insurance contracts and policies, (ii) real property lease contracts with respect to real property not listed in Paragraph I.B.1 of this definition and (iii) any contract set forth on Annex 2, Schedule II.B.4 to the [Proposed] Final Judgment.

5.    all licenses, permits, certifications, approvals, consents, registrations, waivers, and authorizations, including all pending applications or renewals of the same;

6.    data and information (including technical information) held or controlled by Defendants;

7.    all books and records, including (i) customer and supplier lists, accounts, sales, and credits records; (ii) budgets, pricing guidelines, ledgers, journals, deeds, title policies, minute books, and operating plans; (iii) financial statements and related work papers and letters from accountants; (iv) environmental studies and plans; (v) records and research data concerning historic and current research and development activities, including designs of experiments and the results of successful and unsuccessful designs and experiments; and (vi) safety procedures (e.g., for the handling of materials and substances) and quality assurance and control procedures; *provided, however,* that minute books, corporate charter, stock or equity record books, and books and records that pertain to the organization, existence or capitalization of Spirent and its affiliates, do not form part of the Divestiture Assets;

8.    copies of all tax returns related to taxes on or with respect to the Divestiture Business or the Divestiture Assets;

9.     all intellectual property owned, licensed, or sublicensed, either as licensor or licensee, including (a) patents, patent applications, and inventions and discoveries that may be patentable, (b) registered and unregistered copyrights and copyright applications, (c) registered and unregistered trademarks, trade dress, service marks, trade names, and trademark applications (including commercial names and d/b/a names), and (d) rights in internet web sites and internet domain names, in each case, set forth on Annex 3, Schedule II.B.9 to the [Proposed] Final Judgment; *provided, however,* that trademarks, service marks, trade names, internet domain names, logos, slogans, trade dress, and other similar designations of source or origin of the Defendants (including the goodwill symbolized thereby) containing the following marks do not form part of the Divestiture Assets: "Spirent", "Spirent Communications" and the Spirent circle device;

10.     tangible and electronic embodiments of know-how, documentation of ideas, research and development files, laboratory notebooks and other similar tangible or electronic materials (including trade secrets, design protocols, specifications for materials, specifications for parts, specifications for devices, design tools and simulation capabilities), or proprietary software;

11.     all rights to causes of action, lawsuits, judgments, claims, defenses, indemnities, guarantees, refunds, rights of recovery, rights of set off and other rights and privileges against third parties and demands of any nature, except for claims for refunds of any taxes;

12.     all goodwill in respect of, or arising primarily out of, the conduct of the Divestiture Business (including the exclusive right for Acquirer to represent itself as carrying on the operation of the Divestiture Business in succession of Spirent);

13.    all guaranties, warranties, indemnities and similar rights granted by any third party relating to the Divestiture Business or a Divestiture Asset to the extent required to be performed during the period on and after the Divestiture Date; and

14.    originals of all personnel records relating to Relevant Personnel.

*Provided*, *however*, that except as otherwise specifically addressed in this Paragraph I.B (including the assets listed in Paragraph I.B.1 and the Schedules in Paragraph I.B), for any property or assets that relate to, are used in the operation of, or contain information for, both the Divestiture Business and Defendants' other businesses ("Shared Assets"), only the portion of such property or assets related to or necessary for the operation of the Divestiture Business constitutes Divestiture Assets. The United States, in its sole discretion, will determine whether Shared Assets are necessary for the operation of the Divestiture Business.

C.    "Divestiture Business" means the high-speed ethernet, network security, and channel emulation business lines of Spirent, Spirent TestCenter, and the following product lines and projects, each including the products listed in Annex 4, Schedule II.C to the [Proposed] Final Judgment:

1.    network infrastructure testing applications offering network access / switching / routing / SDN protocol coverage, cloud and data-center infrastructure test (including compute, storage, network) and service provider scale test; automotive V2X test and in-vehicle networking test;

2.    application and security testing solutions providing network application performance and security attacks at performance load for testing converged multi-play services, application delivery and network security controls, including the Avalanche and Cyberflood branded product lines; and

3.      Spirent's channel emulation business, including the Vertex branded channel emulation testing product line and development projects for (i) an updated radio frequency card and (ii) an updated channel emulation product code named "Project Aspen."

D.      "Divestiture Date" means the date on which the Divestiture Assets are divested to Acquirer pursuant to this Final Judgment.

E.      "Including" means including but not limited to.

F.      "Keysight" means Defendant Keysight Technologies, Inc., incorporated in Delaware with its headquarters in Santa Rosa, California, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

G.      "Relevant Personnel" means all full-time, part-time, or contract employees of Spirent, wherever located, whose job responsibilities relate in any way to the Divestiture Assets or the design, production, and sale of high-speed ethernet testing, network security testing, and radio frequency (RF) channel emulators, except to the extent Acquirer determines that such employees are not necessary to the operation of the Divestiture Business. The United States, in its sole discretion, will resolve any disagreement regarding which employees are Relevant Personnel.

H.      "Spirent" means Defendant Spirent Communications, plc, which is registered in England and Wales with its headquarters in Crawley, West Sussex RH10 1BD, United Kingdom, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

I.      "Transaction" means the proposed acquisition of Spirent by Keysight.

J.      "Viavi" means Viavi Solutions, Inc., a Delaware corporation with its headquarters in Chandler, Arizona, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

## II. OBJECTIVES

The proposed Final Judgment filed in this case is meant to ensure Defendants' prompt divestiture of the Divestiture Assets for the purpose of establishing a viable competitor in the provision of communications test and measurement solutions for high-speed ethernet, network security, and automotive testing solutions in order to remedy the anticompetitive effects that the United States alleges would otherwise result from the acquisition of Spirent by Keysight. This Stipulation and Order ensures that, prior to divestiture, the Divestiture Assets remain independent, economically viable, competitive, and saleable; that Defendants will preserve and maintain the Divestiture Assets; and that the level of competition that existed between Defendants prior to the Transaction is maintained during the pendency of the required divestiture of the Divestiture Assets.

## III. JURISDICTION AND VENUE

The Court has jurisdiction over the subject matter of this action and over the parties to it. Venue for this action is proper in the United States District Court for the District of Columbia. Defendants waive service of summons of the Complaint.

## IV. CONSUMMATION OF THE TRANSACTION

Defendants will not consummate the Transaction before the Court has signed this Stipulation and Order.

## V. COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT

A.      The proposed Final Judgment filed with this Stipulation and Order, or any amended proposed Final Judgment agreed upon in writing by the United States and Defendants, may be filed with and entered by the Court as the Final Judgment, upon the motion of the United States or upon the Court's own motion, after compliance with the requirements of the Antitrust Procedures and Penalties Act ("APPA"), 15 U.S.C. § 16, and without further notice to any party or any other proceeding, as long as the United States has not withdrawn its consent. The United States may withdraw its consent at any time before the entry of the Final Judgment by serving notice on Defendants and by filing that notice with the Court.

B.      From the date of the signing of this Stipulation and Order by Defendants until the Final Judgment is entered by the Court, or until expiration of time for all appeals of any ruling declining entry of the proposed Final Judgment, Defendants will comply with all of the terms and provisions of the proposed Final Judgment.

C.      From the date on which the Court enters this Stipulation and Order, the United States will have the full rights and enforcement powers set forth in the proposed Final Judgment as if the proposed Final Judgment were in full force and effect as a final order of the Court, and Section XV of the proposed Final Judgment will also apply to violations of this Stipulation and Order.

D.      Defendants agree to arrange, at their expense, publication of the newspaper notice required by the APPA, which will be drafted by the United States in its sole discretion. The publication must be arranged as quickly as possible and, in any event, no later than three business days after Defendants' receipt of (1) the text of the notice from the United States and (2) the identity of the newspaper or newspapers within which the publication must be made.

Defendants must promptly send to the United States (1) confirmation that publication of the newspaper notice has been arranged for each newspaper identified and (2) the certification of the publication prepared by the newspaper or newspapers within which the notice was published.

E.      Any person who wishes to submit to the United States written comments regarding the proposed Final Judgment should do so within 60 calendar days beginning with the first day of the publication of the newspaper notice required by APPA or the publication of the proposed Final Judgment and Competitive Impact Statement in the *Federal Register* as required by APPA, whichever is later.

F.      This Stipulation and Order applies with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the United States and Defendants and filed with the Court.

G.      Defendants represent that the divestiture ordered by the proposed Final Judgment can and will be made and that Defendants will not later raise a claim of mistake, hardship, or difficulty of compliance as grounds for asking the Court to modify any provision of the proposed Final Judgment or this Stipulation and Order.

H.      This Stipulation and Order, including the proposed Final Judgment filed with this Stipulation and Order or any amended proposed Final Judgment agreed upon in writing by the United States and Defendants constitutes the final, complete, and exclusive agreement and understanding among the United States and Defendants with respect to the settlement of the claims expressly stated in the Complaint filed in this above-captioned case, and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.

## VI. ASSET PRESERVATION AND HOLD SEPARATE

From the date of the signing of this Stipulation and Order by Defendants and until the divestiture required by the proposed Final Judgment has been accomplished:

A.    Defendants must take all actions necessary to operate, preserve, and maintain the full economic viability, marketability, and competitiveness of the Divestiture Assets including by (1) operating the Divestiture Assets in the ordinary course of business and consistent with past practices and (2) providing sufficient working capital and lines and sources of credit.

B.    Defendants must use all reasonable efforts to maintain and increase the sales and revenues of the products and services provided by the Divestiture Assets and must maintain at FY2024 levels or previously approved levels for FY2025, whichever are higher, all promotional, advertising, sales, technical assistance, customer support and service, marketing, research and development, and merchandising support for the Divestiture Assets.

C.    Defendants must use all reasonable efforts to maintain and preserve existing relationships with customers, suppliers, governmental authorities, vendors, landlords, creditors, agents, and all others having business relationships relating to the Divestiture Assets.

D.    Defendants must maintain, in accordance with sound accounting principles, separate, accurate, and complete financial ledgers, books, or other records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues, and income of the Divestiture Assets.

E.    Defendants must maintain the working conditions, staffing levels, and work force training and expertise of all Relevant Personnel. Relevant Personnel must not be transferred or reassigned except to Acquirer or via transfer bids initiated by employees pursuant to Defendants' regular, established job posting policy. Defendants must provide the United States with 10

10

calendar days' notice of the transfer of Relevant Personnel, and, upon objection by the United States to such transfer, Relevant Personnel may not be transferred or reassigned. Defendants must use all reasonable efforts, including by providing financial incentives, to encourage Relevant Personnel to continue in the positions held as of the date of the signing of this Stipulation and Order by Defendants, and financial incentives may not be structured so as to disincentivize employees from accepting employment with Acquirer.

F.      Defendants must maintain all licenses, permits, approvals, authorizations, and certifications related to or necessary for the operation of the Divestiture Assets and must operate the Divestiture Assets in compliance with all regulatory obligations and requirements.

G.      Defendants must take all steps necessary to ensure that the Divestiture Assets are fully maintained in operable condition at no less than their current capacity and level of sales, with the same level of quality, functionality, access, and customer support, and must, consistent with past practices, maintain and adhere to normal repair and maintenance schedules for the Divestiture Assets.

H.      Except as approved by the United States in accordance with the terms of the proposed Final Judgment, Defendants must not remove, sell, lease, assign, transfer, pledge, encumber, or otherwise dispose of any of the Divestiture Assets.

I.      Defendants must take no action that would jeopardize, delay, or impede the sale of the Divestiture Assets. This Stipulation and Order and the Final Judgment do not prevent or restrict the board of directors of Spirent from withdrawing or switching its recommendation in respect of the Transaction, or from negotiating or implementing any other transaction with a third party which may compete with the Transaction.

J.      Management, sales, and operations of the Divestiture Assets must be held entirely separate, distinct, and apart from Defendants' other operations. Defendants must not coordinate the production, marketing, or terms of sale of any products produced or sold by the Divestiture Assets with the production, marketing, or terms of sale of any other products produced or sold by Defendants.

K.      Defendants must implement and maintain procedures to prevent competitively sensitive information of the Divestiture Business or relating to the Divestiture Assets from being accessed by, shared with, or disclosed to Keysight employees, except for any such sharing or disclosure necessary for Defendants' divestiture of the Divestiture Business or the Divestiture Assets.

L.      Defendants must appoint, subject to approval of the United States in its sole discretion, a person or persons to oversee the Divestiture Assets. Such person or persons will be responsible for Defendants' compliance with this Section VI, for managing the sales and operations of the Divestiture Assets separately from Defendants' other operations and for ensuring the preservation of the Divestiture Assets for the duration of this Stipulation and Order. In the event any such person is unable to perform his or her duties, Defendants must appoint, subject to the approval of the United States in its sole discretion, a replacement within 10 business days. Should Defendants fail to appoint a replacement acceptable to the United States within this time period, the United States will appoint a replacement.

M.      Within 20 calendar days after the entry of this Stipulation and Order, Defendants will inform the United States of the steps Defendants have taken to comply with this Stipulation and Order.

## VII. DURATION OF OBLIGATIONS

Defendants' obligations under Section VI of this Stipulation and Order will expire upon the completion of the divestiture required by the proposed Final Judgment or unless otherwise ordered by the Court. In the event that (1) the United States has withdrawn its consent, as provided in Paragraph V.A of this Stipulation and Order; (2) the United States voluntarily dismisses the Complaint in this matter; or (3) the Court declines to enter the proposed Final Judgment, the time has expired for all appeals of any ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, Defendants are released from all further obligations under this Stipulation and Order, and the making of this Stipulation and Order will be without prejudice to any party in this or any other proceeding.

Dated: June 2, 2025

Respectfully submitted,

FOR PLAINTIFF
UNITED STATES OF AMERICA:

*/s/ Carl Willner*
Carl Willner (D.C. Bar #412841)
Carmel Arikat (D.C. Bar #1018208)
Curtis Strong (D.C. Bar #1005093)
U.S. Department of Justice
Antitrust Division
Media, Entertainment, and
Communications Section
450 Fifth Street NW, Suite 7000
Washington, DC 20530
Telephone: 202-514-5813

FOR DEFENDANT
KEYSIGHT TECHNOLOGIES, INC.:

*/s/ Leon B. Greenfield*
Leon B. Greenfield (D.C. Bar #440795)
Hartmut Schneider (D.C. Bar #499258)
WilmerHale
2100 Pennsylvania Ave. NW
Washington, DC 20037
Telephone: 202-663-6972
leon.greenfield@wilmerhale.com
hartmut.schneider@wilmerhale.com

FOR DEFENDANT
SPIRENT COMMUNICATIONS PLC:

*/s/ Antonia B. Sherman*
Antonia B. Sherman (D.C. Bar #1614732)
Linklaters LLP
601 13th St. NW #400
Washington, DC 20005
Telephone: 202-654-9268
antonia.sherman@linklaters.com

## ORDER

IT IS SO ORDERED by the Court, this 20th day of June, 2025.

_____
Carl J. Nichols

United States District Judge

14