**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>KEYSIGHT TECHNOLOGIES, INC.,<br>*et al.*,<br><br>*Defendants*. | Civil Action No. 1:25-cv-01734 (CJN) |

## FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint against Keysight

Technologies, Inc. ("Keysight") and Spirent Communications plc ("Spirent") (together

"Defendants") on June 2, 2025;

AND WHEREAS, the United States and Defendants have consented to entry of this Final

Judgment without the taking of testimony, without trial or adjudication of any issue of fact or

law, and without this Final Judgment constituting any evidence against or admission by any

party relating to any issue of fact or law;

AND WHEREAS, Defendants agree to make a divestiture and to undertake certain

actions related to the divestiture to remedy the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants represent that the divestiture and other relief required by

this Final Judgment can and will be made and that Defendants will not later raise a claim of

hardship or difficulty as grounds for asking the Court to modify any provision of this Final Judgment;

NOW THEREFORE, it is ORDERED, ADJUDGED, AND DECREED:

## I.    JURISDICTION

The Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act (15 U.S.C. § 18).

## II.    DEFINITIONS

As used in this Final Judgment:

A.    "Acquirer" means Viavi or another entity approved by the United States in its sole discretion to which Defendants divest the Divestiture Assets.

B.    "Divestiture Assets" means all of Defendants' rights, titles, and interests in and to all property and assets, tangible and intangible, wherever located, relating to or used in connection with the Divestiture Business, including the following:

1.    the real property leasehold interests and associated renewal rights in the facilities located at (a) 27349 Agoura Road, Calabasas, California 91301 (United States); (b) 47-53 Lascar Catargiu Blvd., 1st District, Bucharest (Romania); (c) Pacific Guardian Center – Mauka Tower, 737 Bishop Street, Suite 1900, Honolulu, Hawaii 96813 (United States); (d) Unit 1301, 1302, 1303, 1305, 1306, 1307, 1309, 13th Floor, Shining Building, No. 35 Xueyuan Road, Haidian District, Beijing (China); (e) Unit B4-09, 4th Underground Floor, Shining Building, No. 35 Xueyuan Road, Haidian District, Beijing (China); and (f) 2nd Floor, Quadrant 2 of Tower 1, Umiya Business Bay, Sarjapur Outer Ring Road, Bangalore East Taluk 560 103 (India);

2

2.      all inventory (whether raw materials, work in process, semifinished goods, finished goods, packaging, labels, scrap or supplies);

3.      all furniture, fixtures, furnishings, vehicles, equipment, machines, computers, tools, spare parts and tooling, office and other supplies, technical documentation, and other tangible personal property (including third party software embedded therein) including as set forth on Annex 1, Schedule II.B.3 hereto;

4.      all contracts, including all development contracts with XRComm and VVDN Technologies for Spirent's channel emulation business, contractual rights, and customer relationships, including Spirent's relationship with Calnex as a reseller and all other agreements, commitments and purchase orders, including those related to intellectual property, suppliers, or customers, and all outstanding offers or solicitations to enter into a similar arrangement; *provided, however,* that for any contracts that relate to both the Divestiture Business and to businesses not included in the Divestiture Assets, only the portion of the contract related to the Divestiture Business is a Divestiture Asset; *provided*, *further*, that none of the following contracts form part of the Divestiture Assets: (i) insurance contracts and policies, (ii) real property lease contracts with respect to real property not listed in Paragraph II.B.1 of this definition and (iii) any contract set forth on Annex 2, Schedule II.B.4.

5.      all licenses, permits, certifications, approvals, consents, registrations, waivers, and authorizations, including all pending applications or renewals of the same;

6.      data and information (including technical information) held or controlled by Defendants;

7.    all books and records, including (i) customer and supplier lists, accounts, sales, and credits records; (ii) budgets, pricing guidelines, ledgers, journals, deeds, title policies, minute books, and operating plans; (iii) financial statements and related work papers and letters from accountants; (iv) environmental studies and plans; (v) records and research data concerning historic and current research and development activities, including designs of experiments and the results of successful and unsuccessful designs and experiments; and (vi) safety procedures (e.g., for the handling of materials and substances) and quality assurance and control procedures; *provided, however,* that minute books, corporate charter, stock or equity record books, and books and records that pertain to the organization, existence or capitalization of Spirent and its affiliates, do not form part of the Divestiture Assets;

8.    copies of all tax returns related to taxes on or with respect to the Divestiture Business or the Divestiture Assets;

9.    all intellectual property owned, licensed, or sublicensed, either as licensor or licensee, including (a) patents, patent applications, and inventions and discoveries that may be patentable, (b) registered and unregistered copyrights and copyright applications, (c) registered and unregistered trademarks, trade dress, service marks, trade names, and trademark applications (including commercial names and d/b/a names), and (d) rights in internet web sites and internet domain names, in each case, set forth on Annex 3, Schedule II.B.9 hereto; *provided, however,* that trademarks, service marks, trade names, internet domain names, logos, slogans, trade dress, and other similar designations of source or origin of the Defendants (including the goodwill symbolized thereby)

containing the following marks do not form part of the Divestiture Assets: "Spirent", "Spirent Communications" and the Spirent circle device;

10.     tangible and electronic embodiments of know-how, documentation of ideas, research and development files, laboratory notebooks and other similar tangible or electronic materials (including trade secrets, design protocols, specifications for materials, specifications for parts, specifications for devices, design tools and simulation capabilities), or proprietary software;

11.     all rights to causes of action, lawsuits, judgments, claims, defenses, indemnities, guarantees, refunds, rights of recovery, rights of set off and other rights and privileges against third parties and demands of any nature, except for claims for refunds of any taxes;

12.     all goodwill in respect of, or arising primarily out of, the conduct of the Divestiture Business (including the exclusive right for Acquirer to represent itself as carrying on the operation of the Divestiture Business in succession of Spirent);

13.     all guaranties, warranties, indemnities and similar rights granted by any third party relating to the Divestiture Business or a Divestiture Asset to the extent required to be performed during the period on and after the Divestiture Date; and

14.     originals of all personnel records relating to Relevant Personnel.

*Provided*, *however*, that except as otherwise specifically addressed in this Paragraph II.B (including the assets listed in Paragraph II.B.1 and the Schedules in Paragraph II.B), for any property or assets that relate to, are used in the operation of, or contain information for, both the Divestiture Business and Defendants' other businesses ("Shared Assets"), only the portion of such property or assets related to or necessary for the operation of the Divestiture Business

constitutes Divestiture Assets. The United States, in its sole discretion, will determine whether Shared Assets are necessary for the operation of the Divestiture Business.

C.    "Divestiture Business" means the high-speed ethernet, network security, and channel emulation business lines of Spirent, Spirent TestCenter, and the following product lines and projects, each including the products listed in Annex 4, Schedule II.C:

1.    network infrastructure testing applications offering network access / switching / routing / SDN protocol coverage, cloud and data-center infrastructure test (including compute, storage, network) and service provider scale test; automotive V2X test and in-vehicle networking test;

2.    application and security testing solutions providing network application performance and security attacks at performance load for testing converged multi-play services, application delivery and network security controls, including the Avalanche and Cyberflood branded product lines; and

3.    Spirent's channel emulation business, including the Vertex branded channel emulation testing product line and development projects for (i) an updated radio frequency card and (ii) an updated channel emulation product code named "Project Aspen."

D.    "Divestiture Date" means the date on which the Divestiture Assets are divested to Acquirer pursuant to this Final Judgment.

E.    "Including" means including but not limited to.

F.    "Keysight" means Defendant Keysight Technologies, Inc., incorporated in Delaware with its headquarters in Santa Rosa, California, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

6

G.    "Regulatory Approvals" means (1) any approvals or clearances under antitrust, competition, or foreign direct investment laws that are required for the Transaction to proceed; (2) any approvals or clearances under antitrust, competition, or foreign direct investment laws that are required for Acquirer's acquisition of the Divestiture Assets to proceed; and (3) the sanctioning by the High Court of Justice in England and Wales of the scheme of arrangement pursuant to which the Defendants are effecting the Transaction.

H.    "Relevant Personnel" means all full-time, part-time, or contract employees of Spirent, wherever located, whose job responsibilities relate in any way to the Divestiture Assets or the design, production, and sale of high-speed ethernet testing, network security testing, and radio frequency (RF) channel emulators, except to the extent Acquirer determines that such employees are not necessary to the operation of the Divestiture Business. The United States, in its sole discretion, will resolve any disagreement regarding which employees are Relevant Personnel.

I.    "Spirent" means Defendant Spirent Communications, plc, which is registered in England and Wales with its headquarters in Crawley, West Sussex RH10 1BD, United Kingdom, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

J.    "Transaction" means the proposed acquisition of Spirent by Keysight.

K.    "Viavi" means Viavi Solutions, Inc., a Delaware corporation with its headquarters in Chandler, Arizona, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

### III.    APPLICABILITY

A.      This Final Judgment applies to Defendants, as defined above, and all other persons in active concert or participation with any Defendant who receive actual notice of this Final Judgment.

B.      If, prior to complying with Section IV of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of the assets or of business units that include the Divestiture Assets, Defendants must require any purchaser to be bound by the provisions of this Final Judgment.

### IV.       DIVESTITURE

A.      Defendants are ordered and directed, within ten (10) calendar days after the Court's entry of the Asset Preservation and Hold Separate Stipulation and Order in this matter or within ten (10) calendar days after Regulatory Approvals are received, whichever is later, to divest the Divestiture Assets in a manner consistent with this Final Judgment to Acquirer. The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed ninety (90) calendar days in total and will notify the Court of any extension.

B.      For all contracts, agreements, and customer relationships (or portions of such contracts, agreements, and customer relationships) included in the Divestiture Assets, Defendants must assign or otherwise transfer all contracts, agreements, and customer relationships to Acquirer within the deadlines set forth in Paragraph IV.A; *provided, however,* that for any contract or agreement that requires the consent of another party to assign or otherwise transfer, Defendants must use best efforts to accomplish the assignment or transfer. Defendants must not interfere with any negotiations between Acquirer and a contracting party.

C.    Defendants must use best efforts to divest the Divestiture Assets as expeditiously as possible. Defendants must take no action that would jeopardize the completion of the divestiture ordered by the Court, including any action to impede the permitting, operation, or divestiture of the Divestiture Assets.

D.    Unless the United States otherwise consents in writing, divestiture pursuant to this Final Judgment must include the entire Divestiture Assets and must be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by Acquirer as part of a viable, ongoing business of the design, production, and sale of high-speed ethernet testing, network security testing, and radio frequency (RF) channel emulators and that the divestiture to Acquirer will remedy the competitive harm alleged in the Complaint.

E.    The divestiture must be made to an Acquirer that, in the United States' sole judgment, has the intent and capability, including the necessary managerial, operational, technical, and financial capability, to compete effectively in the design, production, and sale of high-speed ethernet testing, network security testing, and radio frequency (RF) channel emulators.

F.    The divestiture must be accomplished in a manner that satisfies the United States, in its sole discretion, that none of the terms of any agreement between Acquirer and Defendants give Defendants the ability unreasonably to raise Acquirer's costs, to lower Acquirer's efficiency, or otherwise interfere in the ability of Acquirer to compete effectively in the design, production, and sale of high-speed ethernet testing, network security testing, and radio frequency (RF) channel emulators.

G.      In the event Defendants are attempting to divest the Divestiture Assets to an Acquirer other than Viavi, Defendants promptly must make known, by usual and customary means, the availability of the Divestiture Assets. Defendants must inform any person making an inquiry relating to a possible purchase of the Divestiture Assets that the Divestiture Assets are being divested in accordance with this Final Judgment and must provide that person with a copy of this Final Judgment. Defendants must offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets that are customarily provided in a due diligence process; *provided, however,* that Defendants need not provide information or documents subject to the attorney-client privilege or work-product doctrine. Defendants must make all information and documents available to the United States at the same time that the information and documents are made available to any other person.

H.      Defendants must provide prospective Acquirers with (1) access to make inspections of the Divestiture Assets; (2) access to all environmental, zoning, and other permitting documents and information relating to the Divestiture Assets; and (3) access to all financial, operational, or other documents and information relating to the Divestiture Assets that would customarily be provided as part of a due diligence process. Defendants also must disclose all encumbrances on any part of the Divestiture Assets, including on intangible property.

I.      Defendants must cooperate with and assist Acquirer in identifying and, at the option of Acquirer, hiring all Relevant Personnel, including:

1.      No later than the date that is the later of (a) ten (10) business days following the entry of the Asset Preservation and Hold Separate Stipulation and Order in this matter and (b) ten (10) business days prior to the Divestiture Date, Defendants must identify all

Relevant Personnel to Acquirer and the United States, including by providing organization charts or equivalent information to show how all Relevant Personnel fit into Spirent's existing organizational structure.

2.      Within ten (10) business days following receipt of a request by Acquirer or the United States, Defendants must provide to Acquirer and the United States additional information relating to Relevant Personnel, including name, job title, reporting relationships, past experience, responsibilities, training and educational histories, relevant certifications, and job performance evaluations. Defendants must also provide to Acquirer and the United States information showing current and accrued compensation and benefits of Relevant Personnel, including most recent bonuses paid, aggregate annual compensation, current target or guaranteed bonus, if any, any retention agreement or incentives, any equity or equity-based incentive compensation arrangements, any commission-based compensation arrangements, and any other payments due, compensation or benefits accrued, or promises made to the Relevant Personnel. If Defendants are barred by any applicable law from providing any of this information, Defendants must provide, within ten (10) business days following receipt of the request, the requested information to the full extent permitted by law and also must provide a written explanation of Defendants' inability to provide the remaining information, including specifically identifying the provisions of the applicable laws.

3.      At the request of Acquirer, Defendants must promptly make Relevant Personnel available for private interviews with Acquirer during normal business hours at a mutually agreeable location.

4.      Defendants must not interfere with any effort by Acquirer to employ any Relevant Personnel. Interference includes offering to increase the compensation or improve the

11

benefits of Relevant Personnel unless (a) the offer is part of a company-wide increase in compensation or improvement in benefits that was announced prior to March 28, 2024, or (b) the offer is approved by the United States in its sole discretion. Defendants' obligations under this Paragraph IV.I.4 will expire one hundred and eighty (180) calendar days after the Divestiture Date.

5.    For Relevant Personnel who elect employment with Acquirer within one hundred and eighty (180) calendar days of the Divestiture Date or whose employment transfers automatically to Acquirer as of the Divestiture Date, Defendants must waive all non-compete and nondisclosure agreements with respect to the Divestiture Assets and the Divestiture Business; vest and pay to the Relevant Personnel (or to Acquirer for payment to the employee) on a prorated basis any bonuses, incentives, other salary, benefits or other compensation fully or partially accrued at the time of the transfer of the employee to Acquirer; vest any unvested pension and other equity rights; and provide all other benefits, if any, that those Relevant Personnel otherwise would have been provided had the Relevant Personnel continued employment with Defendants, including any retention bonuses or payments. Notwithstanding the foregoing, Defendants may maintain reasonable restrictions on disclosure by Relevant Personnel of Defendants' proprietary non-public information that is unrelated to the Divestiture Assets or the provision of commodity price assessments and related news and analysis and not otherwise required to be disclosed by this Final Judgment.

6.    For a period of twelve (12) months from the Divestiture Date, Defendants may not solicit to rehire Relevant Personnel who were hired by Acquirer within ninety (90) calendar days of the Divestiture Date unless (a) an individual is terminated or laid off by Acquirer or (b) Acquirer agrees in writing that Defendants may solicit to re-hire that individual.

Nothing in this Paragraph IV.I.6 prohibits Defendants from advertising employment openings using general solicitations or advertisements and re-hiring Relevant Personnel who apply for an employment opening through a general solicitation or advertisement.

J.        Defendants must warrant to Acquirer that (1) the Divestiture Assets will be operational and without material defect on the date of their transfer to Acquirer; (2) there are no material defects in the environmental, zoning, or other permits relating to the operation of the Divestiture Assets; and (3) Defendants have disclosed all encumbrances on any part of the Divestiture Assets, including on intangible property. Following the sale of the Divestiture Assets, Defendants must not undertake, directly or indirectly, challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

K.        Defendants must use best efforts to assist Acquirer to obtain all necessary licenses, registrations, and permits to operate the Divestiture Business. Defendants must coordinate and cooperate with Acquirer in exchanging information and assistance in connection with making all filings or notifications necessary to transfer any permits and any permit applications that are part of the Divestiture Assets to Acquirer, or in connection with any applications for new permits relating to the Divestiture Business. Until Acquirer obtains the necessary licenses, registrations, and permits, Defendants must provide Acquirer with the benefit of Defendants' licenses, registrations, and permits to the full extent permissible by law.

L.        At the option of Acquirer, and subject to approval by the United States in its sole discretion, on or before the Divestiture Date, Defendants must enter into a contract or contracts with Acquirer to provide transition services (1) for a period of up to ninety (90) calendar days, for cross-docking and warehousing support, access to Divestiture Assets in Defendants' facilities, marketing, information technology services, human resources, accounting, payroll,

13

accounts payable, accounts receivable, and revenue recognition, and export control, and (2) for a period of up to twelve (12) months, for customer service and support. All transition services contracts must be on terms and conditions reasonably related to market conditions for the provision of the transition services. Any amendment to or modification of any provision of a contract to provide transition services is subject to approval by the United States, in its sole discretion. The United States, in its sole discretion, may approve one or more extensions of any contract for transition services for a total of up to an additional ninety (90) calendar days. If Acquirer seeks an extension of the term of any contract for transition services, Defendants must notify the United States in writing at least five (5) business days after receipt of an extension notice from Acquirer. Acquirer may terminate a contract for transition services, or any portion of a contract for transition services (including all interdependent services), without cost or penalty, at any time upon thirty (30) calendar days' written notice to Defendants. The employee(s) of Defendants tasked with providing transition services must not share any competitively sensitive information of Acquirer with any other employee of Defendants.

M.    If any term of an agreement between Defendants and Acquirer, including an agreement to effectuate the divestiture required by this Final Judgment, varies from a term of this Final Judgment, to the extent that Defendants cannot fully comply with both, this Final Judgment determines Defendants' obligations.

### V. APPOINTMENT OF DIVESTITURE TRUSTEE

A.    If Defendants have not divested the Divestiture Assets within the period specified in Paragraph IV.A, Defendants must immediately notify the United States of that fact in writing. Upon application of the United States, which Defendants may not oppose, the Court will appoint

a divestiture trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.       After the appointment of a divestiture trustee by the Court, only the divestiture trustee will have the right to sell those Divestiture Assets that the divestiture trustee has been appointed to sell. The divestiture trustee will have the power and authority to accomplish the divestiture to Acquirer, at a price and on terms obtainable through reasonable effort by the divestiture trustee, subject to the provisions of Sections IV, V and VI of this Final Judgment, and will have other powers as the Court deems appropriate. The divestiture trustee must sell the Divestiture Assets as quickly as possible.

C.       Defendants may not object to a sale by the divestiture trustee on any ground other than malfeasance by the divestiture trustee. Objections by Defendants must be conveyed in writing to the United States and the divestiture trustee within ten (10) calendar days after the divestiture trustee has provided the notice of proposed divestiture required by Section VI.

D.       The divestiture trustee will serve at the cost and expense of Defendants pursuant to a written agreement, on terms and conditions, including confidentiality requirements and conflict of interest certifications, approved by the United States in its sole discretion.

E.       The divestiture trustee may hire at the cost and expense of Defendants any agents or consultants, including investment bankers, attorneys, and accountants, that are reasonably necessary in the divestiture trustee's judgment to assist with the divestiture trustee's duties. These agents or consultants will be accountable solely to the divestiture trustee and will serve on terms and conditions, including confidentiality requirements and conflict-of-interest certifications, approved by the United States in its sole discretion.

15

F.    The compensation of the divestiture trustee and agents or consultants hired by the divestiture trustee must be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement that provides the divestiture trustee with incentives based on the price and terms of the divestiture and the speed with which it is accomplished. If the divestiture trustee and Defendants are unable to reach agreement on the divestiture trustee's compensation or other terms and conditions of engagement within fourteen (14) calendar days of the appointment of the divestiture trustee by the Court, the United States, in its sole discretion, may take appropriate action, including by making a recommendation to the Court. Within three (3) business days of hiring an agent or consultant, the divestiture trustee must provide written notice of the hiring and rate of compensation to Defendants and the United States.

G.    The divestiture trustee must account for all monies derived from the sale of the Divestiture Assets sold by the divestiture trustee and all costs and expenses incurred. Within thirty (30) calendar days of the Divestiture Date, the divestiture trustee must submit that accounting to the Court for approval. After approval by the Court of the divestiture trustee's accounting, including fees for unpaid services and those of agents or consultants hired by the divestiture trustee, all remaining money must be paid to Defendants and the trust will then be terminated.

H.    Defendants must use best efforts to assist the divestiture trustee to accomplish the required divestiture. Subject to reasonable protection for trade secrets, other confidential research, development, or commercial information, or any applicable privileges, Defendants must provide the divestiture trustee and agents or consultants retained by the divestiture trustee with full and complete access to all personnel, books, records, and facilities of the Divestiture Assets. Defendants also must provide or develop financial and other information relevant to the

Divestiture Assets that the divestiture trustee may reasonably request. Defendants must not take any action to interfere with or to impede the divestiture trustee's accomplishment of the divestiture.

I.      The divestiture trustee must maintain complete records of all efforts made to sell the Divestiture Assets, including by filing monthly reports with the United States setting forth the divestiture trustee's efforts to accomplish the divestiture ordered by this Final Judgment. The reports must include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring any interest in the Divestiture Assets and must describe in detail each contact.

J.      If the divestiture trustee has not accomplished the divestiture ordered by this Final Judgment within one hundred and eighty (180) calendar days of appointment, the divestiture trustee must promptly provide the United States with a report setting forth: (1) the divestiture trustee's efforts to accomplish the required divestiture; (2) the reasons, in the divestiture trustee's judgment, why the required divestiture has not been accomplished; and (3) the divestiture trustee's recommendations for completing the divestiture. Following receipt of that report, the United States may make additional recommendations to the Court. The Court thereafter may enter such orders as it deems appropriate to carry out the purpose of this Final Judgment, which may include extending the trust and the term of the divestiture trustee's appointment by a period requested by the United States.

K.      The divestiture trustee will serve until divestiture of all Divestiture Assets to Acquirer is completed or for a term otherwise ordered by the Court.

17

L.    If the United States determines that the divestiture trustee is not acting diligently or in a reasonably cost-effective manner, the United States may recommend that the Court appoint a substitute divestiture trustee.

## VI.    NOTICE OF PROPOSED DIVESTITURE

A.    Within two (2) business days following execution of a definitive agreement with an Acquirer other than Viavi to divest the Divestiture Assets, Defendants or the divestiture trustee, whichever is then responsible for effecting the divestiture, must notify the United States of the proposed divestiture. If the divestiture trustee is responsible for completing the divestiture, the divestiture trustee also must notify Defendants. The notice must set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets.

B.    After receipt by the United States of the notice required by Paragraph VI.A, the United States may make one or more requests to Defendants or the divestiture trustee for additional information concerning the proposed divestiture, the proposed Acquirer, and other prospective Acquirers. Defendants and the divestiture trustee must furnish any additional information requested within fifteen (15) calendar days of the receipt of each request unless the United States provides written agreement to a different period.

C.    Within forty-five (45) calendar days after receipt of the notice required by Paragraph VI.A or within twenty (20) calendar days after the United States has been provided the additional information requested pursuant to Paragraph VI.B, whichever is later, the United States will provide written notice to Defendants and any divestiture trustee that states whether the United States, in its sole discretion, objects to the proposed Acquirer or any other aspect of

the proposed divestiture. Without written notice that the United States does not object, a divestiture may not be consummated. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendants' limited right to object to the sale under Paragraph V.C of this Final Judgment. Upon objection by Defendants pursuant to Paragraph V.C, a divestiture by the divestiture trustee may not be consummated unless approved by the Court.

## VII.    FINANCING

Defendants may not finance all or any part of Acquirer's purchase of all or part of the Divestiture Assets.

## VIII.    ASSET PRESERVATION AND HOLD SEPARATE OBLIGATIONS

Defendants must take all steps necessary to comply with the Asset Preservation and Hold Separate Stipulation and Order entered by the Court.

## IX.    AFFIDAVITS

A.    Within twenty (20) calendar days of the entry of the Asset Preservation and Hold Separate Stipulation and Order in this matter, and every thirty (30) calendar days thereafter until the divestiture required by this Final Judgment has been completed, each Defendant must deliver to the United States an affidavit, signed by each Defendant's Chief Financial Officer and General Counsel, describing in reasonable detail the fact and manner of each Defendant's compliance with this Final Judgment. The United States, in its sole discretion, may approve different signatories for the affidavits.

B.    In the event Defendants are attempting to divest the Divestiture Assets to an Acquirer other than Viavi, each affidavit required by Paragraph IX.A must include: (1) the name,

address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, an interest in the Divestiture Assets and describe in detail each contact with such persons during that period; (2) a description of the efforts Defendants have taken to solicit buyers for and complete the sale of the Divestiture Assets and to provide required information to prospective Acquirers; and (3) a description of any limitations placed by Defendants on information provided to prospective Acquirers. Objection by the United States to information provided by Defendants to prospective Acquirers must be made within fourteen (14) calendar days of receipt of the affidavit, except that the United States may object at any time if the information set forth in the affidavit is not true or complete.

C.      Defendants must keep all records of any efforts made to divest the Divestiture Assets until one year after the Divestiture Date.

D.      Within twenty (20) calendar days of the Asset Preservation and Hold Separate Stipulation and Order in this matter, each Defendant must deliver to the United States an affidavit signed by each Defendant's Chief Financial Officer and General Counsel, that describes in reasonable detail all actions that Defendant has taken and all steps that Defendant has implemented on an ongoing basis to comply with Section VIII of this Final Judgment. The United States, in its sole discretion, may approve different signatories for the affidavits.

E.      If a Defendant makes any changes to actions and steps described in affidavits provided pursuant to Paragraph IX.D, that Defendant must, within fifteen (15) calendar days after any change is implemented, deliver to the United States an affidavit describing those changes.

20

F.      Defendants must keep all records of any efforts made to comply with Section VIII until one year after the Divestiture Date.

## X.      COMPLIANCE INSPECTION

A.      For the purposes of determining or securing compliance with this Final Judgment or of related orders such as the Asset Preservation and Hold Separate Stipulation and Order or of determining whether this Final Judgment should be modified or vacated, upon written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, and reasonable notice to Defendants, Defendants must permit, from time to time and subject to legally recognized privileges, authorized representatives, including agents retained by the United States:

1.      to have access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide electronic copies of all books, ledgers, accounts, records, data, and documents, wherever located, in the possession, custody, or control of Defendants relating to any matters contained in this Final Judgment; and

2.      to interview, either informally or on the record, Defendants' officers, employees, or agents, wherever located, who may have their individual counsel present, relating to any matters contained in this Final Judgment. The interviews must be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.      Upon the written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, Defendants must submit written reports or respond to written interrogatories, under oath if requested, relating to any matters contained in this Final Judgment.

## XI.    FIREWALLS

A.    Defendants must implement and maintain effective procedures to prevent Acquirer's competitively sensitive information from being shared or disclosed, by or through implementation and execution of the obligations required by this Final Judgment and any associated agreements, including agreements entered pursuant to Paragraph IV.L, by the employees of Defendants tasked with providing transition services to Acquirer (collectively "Firewall Employees") and any other employees of Defendants.

B.    Defendants must, within thirty (30) calendar days of the entry of the Asset Preservation Stipulation and Order, submit to the United States a compliance plan setting forth in detail the procedures Defendants propose to implement to effect compliance with this Section XI. The United States must inform Defendants within ten (10) business days of receipt whether, in its sole discretion, the United States approves or rejects Defendants' compliance plan. Within ten (10) business days of receiving a notice of rejection, Defendants must submit a revised compliance plan. The United States may request that the Court determine whether Defendants' proposed compliance plan fulfills the requirements of this Section XI.

C.    At minimum, an effective compliance plan must include, for all Firewall Employees, (1) initial written notice on or before the Divestiture Date followed by quarterly written reminders, (2) training within thirty (30) calendar days of the Divestiture Date, and (3) provision of written acknowledgment of the obligations of this Section XI within thirty (30) calendar days of the Divestiture Date. The form of all written notifications must be approved by the United States, in its sole discretion. Defendants must maintain complete records of all written notices, training, employee acknowledgments, and all other efforts made to comply with this

22

Section XI until the expiration of all transition services agreements between Keysight and

Acquirer or twelve (12) months after the Divestiture Date, whichever is later.

## XII.        NO REACQUISITION

Defendants may not reacquire any part of or any interest in the Divestiture Assets during

the term of this Final Judgment without prior written authorization of the United States.

## XIII.        PUBLIC DISCLOSURE

A.        No information or documents obtained pursuant to any provision this Final

Judgment, may be divulged by the United States to any person other than an authorized

representative of the executive branch of the United States, except in the course of legal

proceedings to which the United States is a party, including grand-jury proceedings, for the

purpose of evaluating a proposed Acquirer or securing compliance with this Final Judgment, or

as otherwise required by law.

B.        In the event of a request by a third party, pursuant to the Freedom of Information

Act, 5 U.S.C. § 552, for disclosure of information obtained pursuant to any provision of this

Final Judgment, the Antitrust Division will act in accordance with that statute, and the

Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential

commercial information, at 28 C.F.R. § 16.7. Defendants submitting information to the Antitrust

Division should designate the confidential commercial information portions of all applicable

documents and information under 28 C.F.R. § 16.7. Designations of confidentiality expire ten

(10) years after submission, "unless the submitter requests and provides justification for a longer

designation period." *See* 28 C.F.R. § 16.7(b).

C.        If at the time that Defendants furnish information or documents to the United

States pursuant to any provision of this Final Judgment, Defendants represent and identify in

23

writing information or documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," the United States must give Defendants ten (10) calendar days' notice before divulging the material in any legal proceeding (other than a grand jury proceeding).

## XIV.    RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XV.    ENFORCEMENT OF FINAL JUDGMENT

A.    If any time during the five-year period following entry of this Final Judgment, the United States determines at its sole discretion that the Final Judgment has failed to fully redress the violations alleged in the Complaint, then the United States may re-open this proceeding to seek additional relief, including divestiture of additional assets. Such additional relief may be ordered by this Court upon a finding by a preponderance of the evidence that there is a reasonable probability that the proposed Final Judgment did not fully redress the violations alleged in the Complaint.

B.    The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court. Defendants agree that in a civil contempt action, a motion to show cause, or a similar action brought by the United States relating to an alleged violation of this Final Judgment, the United States may establish a violation of this Final Judgment and the appropriateness of a remedy therefor by a

24

preponderance of the evidence, and Defendants waive any argument that a different standard of proof should apply.

C.      This Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition the United States alleges was harmed by the challenged conduct. Defendants agree that they may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

D.      In an enforcement proceeding in which the Court finds that Defendants have violated this Final Judgment, the United States may apply to the Court for an extension of this Final Judgment, together with other relief that may be appropriate. In connection with a successful effort by the United States to enforce this Final Judgment against a Defendant, whether litigated or resolved before litigation, that Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as all other costs including experts' fees, incurred in connection with that effort to enforce this Final Judgment, including in the investigation of the potential violation.

E.      For a period of four (4) years following the expiration of this Final Judgment, if the United States has evidence that a Defendant violated this Final Judgment before it expired, the United States may file an action against that Defendant in this Court requesting that the Court order: (1) Defendant to comply with the terms of this Final Judgment for an additional term of at least four (4) years following the filing of the enforcement action; (2) all appropriate contempt

25

remedies; (3) additional relief needed to ensure the Defendant complies with the terms of this Final Judgment; and (4) fees or expenses as called for by this Section XV.

### XVI.      EXPIRATION OF FINAL JUDGMENT

Unless the Court grants an extension, this Final Judgment will expire ten (10) years from the date of its entry, except that after five (5) years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and Defendants that the divestiture has been completed and continuation of this Final Judgment is no longer necessary or in the public interest.

### XVII.      PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including by making available to the public copies of this Final Judgment and the Competitive Impact Statement, public comments thereon, and any response to comments by the United States. Based upon the record before the Court, which includes the Competitive Impact Statement, entry of this Final Judgment is in the public interest.

**SO ORDERED**.

DATE:  September 15, 2025

_____
CARL J. NICHOLS
United States District Judge

26